THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAMANA NURI, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRUE RELIGION APPAREL, INC. and TRUE RELIGION SALES, LLC,<br><br>Defendants. | Case No. 2:25-cv-00690-LK<br><br>**RESPONSE TO ORDER TO SHOW CAUSE**<br><br>ORAL ARGUMENT REQUESTED |

## I.      INTRODUCTION

Defendants respectfully submit this response to the Court's Order to Show Cause (the "Show Cause Order" or "Order," Dkt. 49) and appreciate the opportunity to clarify their prior Motion to Dismiss (the "Motion" or "Mot."; Dkt. 19) and explain why this Court's exercise of jurisdiction is proper.

Defendants' current counsel—who appeared after the Motion was briefed, but before the Show Cause Order was issued[1]—acknowledge the Motion contained language suggesting Plaintiff pled *no* injury of any kind.  To clarify, while Plaintiff did *not* allege a reliance injury, as required

---

[1] Prior counsel have since withdrawn.

RESPONSE TO ORDER TO SHOW CAUSE - 1
(Case No. 2:25-cv-00690-LK)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

to survive CAN-SPAM preemption—the central issue raised in the Motion—Plaintiff *did* allege a nuisance injury, which numerous courts have held is sufficient to establish Article III standing.

*First*, in *Harbers v. Eddie Bauer, LLC*—invoked by Plaintiff herself—this Court held the alleged receipt of voluminous, deceptive spam confers standing under Article III because: (i) the resulting harm closely resembles injuries sounding in nuisance; and (ii) CEMA was enacted precisely to shield consumers from the associated intrusion, distraction, and cost. 415 F. Supp. 3d 999, 1005 (W.D. Wash. 2019) (Robart, J.). Plaintiff pleads precisely such injuries in her Complaint. Dkt. 1-1 at 4, 6-13 ("Compl."). And the Western District of Washington has continued to apply *Harbers* following *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)—including where, as here, no detrimental reliance on the alleged misstatement is pled. *Brinton v. Vivint Inc.*, 2024 WL 3688589, at *3 (W.D. Wash. Aug. 7, 2024) (Cartwright, J.).

*Second*, by contrast, two U.S. Courts of Appeals have held that, to avoid CAN-SPAM preemption, a CEMA claim must satisfy the elements of traditional misrepresentation torts. Because such torts require not only receipt of a misleading statement *but also* that the recipient suffer a financial injury and damages due to her reliance on the misstatement—which Plaintiff does *not* allege—her claims are preempted, even though she possesses standing.

These results are logically consistent and reflect the disparate legal standards and jurisprudence governing: (a) the injury required to confer standing; and (b) the injury required to plead a claim (or in this case, survive preemption). The two often differ, as the Ninth Circuit recently explained in an action arising under another statute:

> Plaintiffs' challenge fails because the injury-in-fact prong of Article III standing and the merits of a WPA claim are separate inquiries. To establish the constitutional minimum for Article III jurisdiction, a plaintiff must plead an injury-in-fact; this creates a pleading floor. A particular cause of action may require more—for instance, a particular type of injury or a threshold magnitude of injury—without raising the constitutional pleading floor. A failure to plead the more-specific or more-demanding statutory injury shows a failure to state a claim, not a failure to establish standing.

RESPONSE TO ORDER TO SHOW CAUSE - 2
(Case No. 2:25-cv-00690-LK)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*Jones v. Ford Motor Co.*, 85 F.4th 570, 573-74 (9th Cir. 2023) (citations omitted).  Here, Plaintiff pled an injury sufficient for standing but not one sufficient to survive preemption.

## II.    ARGUMENT

### A. Plaintiff's Alleged Receipt of Voluminous, Deceptive Spam Constitutes a Cognizable Injury Under Article III.

1. *Harbers* Establishes Plaintiff's Standing.

The Court requested briefing on whether Plaintiff suffered a "concrete harm under Article III."  Order at 4.  An injury will satisfy Article III if it is "concrete, particularized, and actual or imminent."  *TransUnion*, 594 U.S. at 423.  Intangible injuries may be concrete, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ("*Spokeo I*"))—particularly when in "precisely the form the statute was intended to guard against."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982); *Vargas v. Facebook, Inc.*, 2023 WL 6784359, at *1 (9th Cir. Oct. 13, 2023); *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021), *abrogated on other grounds*.

Further, "[t]he Ninth Circuit has held that an alleged violation of a statutory provision that protects a substantive right is sufficient to establish concrete injury."  *Harbers*, 415 F. Supp. 3d at 1005 (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) ("*Spokeo II*") ("*[S]ome* statutory violations, alone, do establish concrete harm.").

The Western District has held that claimed injuries like Plaintiff's confer standing.  In *Harbers*, the plaintiff brought a class action for statutory damages only, alleging a retailer violated CEMA by sending emails with misleading subject lines.  415 F. Supp. 3d at 1001-02.  Following removal, the plaintiff claimed she lacked standing.  Judge Robart held the receipt of allegedly deceptive commercial emails in violation of CEMA alone—without more—conferred Article III standing.  *Id.* at 1008-11.

RESPONSE TO ORDER TO SHOW CAUSE - 3
(Case No. 2:25-cv-00690-LK)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

In particular, Judge Robart found CEMA was "enacted to protect concrete interests," *id.* at 1008; that the plaintiff alleged a violation of her substantive right "to be free from deceptive commercial e-mails, which suffers anytime a prohibited message is transmitted," *id*. at 1009; and that this "satisfies the concreteness requirement, ***even absent additional allegations of harm***." *Id*. at 1009 (emphasis added).

Alternatively, the Court found that, even if the plaintiff "allege[d] only a procedural CEMA violation," the alleged CEMA violation would nonetheless be "sufficient to confer Article III standing." *Id*. at 1009-10.  Because the plaintiff's receipt of deceptive emails "pose[s] a risk to [her] interest in being free from the nuisance and loss of productivity," the Court found that she "need not allege any additional harm beyond the CEMA violations to allege a concrete injury-in-fact." *Id.* at 1010-11.  Finally, the Court stressed, "given that [plaintiff's] desire to continue receiving [defendant's] commercial e-mails is contingent upon such e-mails not containing false or misleading information in the subject line, by alleging she received such false or misleading e-mails, [the plaintiff] does in fact allege [a cognizable] injury." *Id.* at 1011.

*Harbers*'s logic compels the same result here.  Plaintiff likewise alleges Defendants "commonly send[] three marketing emails every day, and sometimes sends up to ***five per day***," totaling "over 3,000 emails" to date.  Compl. ¶¶ 16, 26, 73; Dkt. 24 at 3.  Plaintiff further alleges Defendants deliberately use "illusory 'sales' and preplanned extensions as an excuse to send consumers ***additional emails***," causing their "inboxes to become ***inflated with spam.***"  Compl. ¶ 3 (emphasis added).  Plaintiff claims this harmed her in at least two ways: the deluge of marketing emails "clog[ged] up inboxes with spam" and "wasted limited data space." *Id*., ¶¶ 5, 26, 75.

This alleged invasion of Plaintiff's "interest in being free from [] nuisance and loss of productivity" is the precise harm Judge Robart found sufficient to confer standing—"even absent additional allegations of harm." *Harbers*, 415 F. Supp. 3d at 1009-10.  Further, like in *Harbers*, Plaintiff alleges she "would like to continue receiving truthful information," but Defendants' transmittal of "false or misleading" subject lines precludes her identification of "which True

RESPONSE TO ORDER TO SHOW CAUSE - 4
(Case No. 2:25-cv-00690-LK)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Religion emails she actually wants to open." Compl. ¶ 77. Finally, as in *Harbers*, 415 F. Supp. 3d at 1003, Plaintiff seeks an injunction, arguing unwanted, deceptive emails "are substantially likely to continue," and that she will be "irreparably harmed" unless such practices are halted. Compl. ¶¶ 16, 85 92; *id*. ¶¶ 16, 80(d), 91, 93.[2]

Finally, Judge Robart's conclusion comports with established law that actions wasting a plaintiff's time—here, purportedly requiring Plaintiff to sift through voluminous spam—constitute a concrete injury under Article III. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig*., 999 F.3d 1247, 1262 (11th Cir. 2021) ("wasted time" is a concrete injury under Article III); *Reichman v. Poshmark, Inc*., 267 F. Supp. 3d 1278, 1284 (S.D. Cal. 2017) (wasted time due to unwanted text messages); *Booth v. Appstack, Inc*., 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) ("waste[d] time answering or otherwise addressing widespread robocalls").

### 2. Plaintiff Correctly Asserted *Harbers*'s Continued Validity.

"The detailed analysis of concrete injury under [CEMA] by th[e] district in *Harbers* remains persuasive after *TransUnion*." *Brinton*, 2024 WL 3688589, at *3 (cleaned up). In *Brinton*, Judge Cartwright held that a plaintiff asserting similar CEMA claims possessed Article III standing, citing "[o]ther district courts, including this district, [that] have recognized that receiving 'spam' emails is encompassed by this [common law] analog" for privacy violations. *Id*. at *2. Indeed, "*TransUnion* did not change the analysis" prescribed in *Spokeo I*. *Diaz v. One Techs., LLC*, 2022 WL 72283, at *6 (C.D. Cal. Jan. 6, 2022) (holding that the transmittal of deceptive email, in violation of California CEMA analogue, itself "establishes an injury in fact; **no other allegations of harm are necessary**" (quoting *Lynch v. AML Network Ltd*., 2021 WL 4453470, at *5 (C.D. Cal. Sept. 27, 2021) (emphasis added))).

---

[2] Discovery may uncover individualized standing issues for *absent* class members. For example, without limitation, individuals who *never even received* the emails because they were sent to an incorrect email address or an obsolete email address may not have standing. However, Plaintiff alleges actual receipt of the emails in her email account. *See, e.g.*, Compl. ¶¶ 5, 73, 77.

RESPONSE TO ORDER TO SHOW CAUSE - 5
(Case No. 2:25-cv-00690-LK)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  Plaintiff *herself* invokes *Harbers* in the Complaint. Compl. ¶ 16. And courts continue to embrace its basic precepts following *Spokeo* and *TransUnion*. *See Whittaker v. Tactical USA LLC*, 2024 WL 1855645, at *6 (E.D. Cal. Apr. 29, 2024) ("**Plaintiffs did not need to allege any harm beyond receiving the emails**" to "confer Article III standing") (emphasis added); *Lynch*, 2021 WL 4453470, at *5 (rejecting "*flawed premise*" that additional harm—beyond the plaintiffs' receipt of deceptive emails—is necessary; rather, "[t]he *transmission and receipt* of these emails" constitutes "an injury in fact sufficient [to] confer Article III standing") (emphasis added); *Silverstein v. Keynetics, Inc.*, 2018 WL 5795776, at *9 (C.D. Cal. Nov. 5, 2018) (finding California's CEMA analogue "codifies a substantive right to be protected from spam" and "protects interests and prohibits behavior that are similar to those at issue in actions for nuisance"); *see also Hoffman v. One Techs., LLC*, 2017 WL 176222, at *2 (W.D. Wash. Jan. 17, 2017) (alleged CEMA violation based on receipt of phishing emails, resulting in "usurpation" of storage space, is "sufficiently concrete and particularized to establish Article III standing"—even absent plaintiff's detrimental reliance on any email).

Nor is it necessary for standing that Plaintiff have relied on any email to make a purchase. As the court explained in *Durward v. One Techs. LLC*,

> **Plaintiff's arguments that she does not have an injury because she "never alleges that she was deceived by the complained of spam" are unavailing.** "Like the VPPA and the TCPA, Cal. Bus. & Prof. Code. § 17529.5(a) 'identifies a substantive right that suffers any time' a prohibited spam message is transmitted." **Thus, the injury occurs when the individual *receives* the spam message; *reliance* on the deceptive content is not required to create an injury.**

2019 WL 4930229, at *8 n.5 (C.D. Cal. Oct. 3, 2019) (citations omitted, emphasis added); *accord Chin v. Evergreen Freedom Found.*, 764 F. Supp. 3d 924, 934 (C.D. Cal. 2025) (receipt of deceptive email "suffices to satisfy the concreteness requirement of Article III standing"—even absent "financial harm").

These precedents comport with the purpose and legislative history of CEMA, which stress the same harms Plaintiff alleges—i.e., clogged inboxes, "wasted limited data space," and inability

RESPONSE TO ORDER TO SHOW CAUSE - 6
(Case No. 2:25-cv-00690-LK)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

to distinguish truthful from misleading advertisements.  Compl. ¶¶ 5, 16, 26, 73, 75; *compare with Aaland v. CRST Home Sols., LLC*, 575 P.3d 1279, 1284 (Wash. Ct. App. 2025) ("The legislature was particularly concerned about the rising volume of commercial e-mails and the costs absorbed by consumers by paying internet providers for the time required to sift through their in-boxes cluttered with commercial e-mail spam."); *accord State v. Heckel*, 24 P.3d 404, 409-10 (Wash. 2001).  Hence, these harms are cognizable under Article III, independent of whether Plaintiff actually read and relied on any email to make a purchase.[3]  Accordingly, Plaintiff has standing.

Alternatively, because the Ninth Circuit will resolve shortly whether claimed injuries like Plaintiff's confer standing, *see* Notice of Appeal, *Montes v. Catalyst Brands LLC*, No. 2:25-cv-00281-TOR (E.D. Wash. Dec. 19, 2025) (Dkt. No. 17), if this Court has any doubts regarding its jurisdiction, it should stay proceedings pending resolution of the *Montes* appeal.

### B. Distinct Standards and Jurisprudence Govern Injuries Required to Survive Federal Preemption.

Finally, Defendants address the Court's inquiry whether prior counsel's submissions comport with standing.  Defendants understand the reason for this inquiry and appreciate the opportunity to clarify their position.  Defendants believe the invocation of this Court's jurisdiction in the Notice of Removal (Dkt. 1) comports with the preemption argument advanced in the Motion to Dismiss.

In their Motion, Defendants did not seek to address standing or the specific types of injuries cognizable under Article III.  Rather, Defendants' central argument was that CAN-SPAM preempted Plaintiff's claims; hence, Defendants focused on the types of injuries required to

---

[3] This Court should decline to follow a contrary decision of the Eastern District of Washington, *Montes v. Catalyst Brands LLC*, 2025 WL 3485827 (E.D. Wash. Dec. 4, 2025).  In *Montes*, there was no allegation the emails were "unwanted" (*id.* at 3); here, by contrast, Plaintiff alleges the receipt of voluminous, deceptive marketing emails was unwanted. Compl. ¶¶ 5, 16, 26, 73, 75.  Further, *Montes* did not address the legislative history—and extensive precedent pre- and post-*TransUnion*—establishing CEMA was enacted to prevent harms associated with receipt of deceptive marketing emails, and that those harms resemble common law nuisance claims. *Montes*, 2025 WL 3485827, at *3.  Moreover, *Montes*, if followed, would require *dismissal* of the action, not remand. *Id.* at 4 ("Therefore, the Court cannot find that it has Article III standing to hear the case and must dismiss.").

RESPONSE TO ORDER TO SHOW CAUSE - 7
(Case No. 2:25-cv-00690-LK)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

survive preemption under *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1063 (9th Cir. 2009); Mot. at 6-12.  Defendants explained that two U.S. Courts of Appeals have held that, to survive preemption, a CEMA plaintiff must show that her claims are consistent with traditional "torts involving misrepresentations."  Mot. at 7-8.  "Traditional claims for fraud or misrepresentation," in turn, require more than the mere receipt of a deceptive statement; they *also* require proof of numerous additional elements, including "materiality," "reliance" on the alleged misstatement, and "actual damages" due to such reliance.  *Id.* at 11-12.  Because Plaintiff "does not allege that she saw or relied upon any of the above emails," or was injured due to such reliance, Defendants argued her claims did not satisfy the elements of a traditional misrepresentation tort and were preempted.  *Id.* at 8-12; Dkt. 28 at 4-5, 9-10.

But this analysis does not foreclose Article III standing—a distinct inquiry governed by different standards and jurisprudence.  Under that jurisprudence, Plaintiff's alleged receipt of voluminous, deceptive spam constitutes a cognizable injury under Article III.  *See supra* Section II.A.  These disparate results do not evidence a logical inconsistency in Defendants' submissions—though Defendants readily acknowledge the Motion should have clearly explained this distinction—but rather reflect substantive differences in: (a) the type of injury required to establish Article III standing under *Harbers*, on the one hand; and (b) the injury required to survive federal preemption under *Virtumundo*, on the other.

This is not unusual: the injury required under Article III often diverges from the injury required to establish an underlying cause of action.  *See, e.g.*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1053 (S.D. Cal. 2023) (Article III standing was satisfied but plaintiff "fail[ed] to allege a cognizable injury under the UCL" because the UCL "demands more: a plaintiff must show 'economic injury'"); *Jones*, 85 F.4th at 574-75.

Once again, however, Defendants recognize that certain arguments in the preemption section of the Motion were unartfully presented.  The Motion was not intended to put standing at issue.  Hence, it did not make explicit that, while Plaintiff's alleged injuries were insufficient to

RESPONSE TO ORDER TO SHOW CAUSE - 8
(Case No. 2:25-cv-00690-LK)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

survive preemption, they conferred standing under *Harbers*. Instead, Defendants simply asserted in the preemption section of their Motion, "Plaintiff does not allege that she saw or relied upon any of the above emails when they arrived, let alone acted upon them or was injured by them." Mot. at 11. Defendants reiterated this point in different ways in their preemption argument, engendering the Court's inquiry. Again, however, Defendants made this argument to advance their core position that "CAN-SPAM preempts Plaintiff's claims," because "[t]he facts in this case do not even remotely resemble a misrepresentation tort." *Id*. at 10-12; *see also id*. at 2 (Plaintiff failed to plead "reliance, injury, or materiality—which the Ninth Circuit has expressly held is a necessary element to invoke the narrow exception to CAN-SPAM preemption"); Dkt. 28 at 4-5 (Plaintiff's claim is preempted because she "fails to plead several essential elements of a misrepresentation tort claim: scienter, reliance, injury, causation, and damages"); *accord id*. at 9-10. Defendants regret any confusion caused by their inartful language and appreciate the opportunity to clarify their position.

### III.    CONCLUSION

As Plaintiff has pled standing, remand is inappropriate.

///
///
///
///
///

RESPONSE TO ORDER TO SHOW CAUSE - 9
(Case No. 2:25-cv-00690-LK)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

DATED: February 13, 2026.

*I certify that this memorandum contains 2,800 words, in compliance with the Local Civil Rules.*

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Damon C. Elder*
Damon C. Elder, WSBA No. 46754
Andrew DeCarlow, WSBA No. 54471
Ari M. Sillman, WSBA No. 60798
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: damon.elder@morganlewis.com
    andrew.decarlow@morganlewis.com
    ari.sillman@morganlewis.com

Ari Micah Selman (*pro hac vice*)
101 Park Avenue
New York, NY 10178-0060
Phone: (212) 309-6000
Email: ari.selman@morganlewis.com

*Attorneys for Defendants True Religion Apparel, Inc. and True Religion Sales, LLC*

RESPONSE TO ORDER TO SHOW CAUSE - 10
(Case No. 2:25-cv-00690-LK)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401