UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAMANA NURI,<br><br>               Plaintiff,<br>     v.<br><br>TRUE RELIGION APPAREL et al.,<br><br>               Defendants. | CASE NO. 2:25-cv-00690-LK<br><br>ORDER REMANDING CASE |

This matter comes before the Court on Defendant True Religion's response to the Court's order to show cause. Dkt. No. 51. True Religion's backpedaling in that response conflicts with its prior representations to the Court in its motion to dismiss. It now argues that Nuri has standing so it can have its preferred forum, *id.*, while previously urging dismissal because Nuri suffered absolutely no injury at all, Dkt. No. 19 at 1–2, 4, 11–12; Dkt. No. 28 at 9–11. True Religion cannot have it both ways. For the reasons stated below, the Court remands this case to King County Superior Court.

ORDER REMANDING CASE - 1

## I.    BACKGROUND

This case is a proposed class action against True Religion Apparel, Inc. and True Religion Sales, LLC for allegedly sending false and misleading emails in violation of Washington's Commercial Electronic Mail Act ("CEMA"), Wash. Rev. Code § 19.190, and Washington's Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86. Dkt. No. 1-1 at 1, 17–19. Plaintiff Tamana Nuri complains that True Religion sends emails (1) "advertising in subject lines that a sale is 'extended'" when "True Religion always planned to continue the sale during the purported 'extension,'" *id.*, (2) "with subject lines advertising 'early access' to sales when the date is simply the planned start of a sale that everyone has access to," *id.* at 8, (3) "with subject lines stating that a sale is 'starting now' when the sale has been ongoing," *id.* at 9, and (4) "with a subject line stating that a sale is ending when it is not," *id.* at 10.

For herself and a class of Washington residents, Nuri seeks "declaratory, equitable, and/or injunctive relief as permitted by law to ensure that True Religion will not continue to engage in the unlawful conduct described in this Complaint," statutory damages of $500 for each violation of CEMA, treble damages under Washington Revised Code Sections 19.190.020(1)(b) and 19.86.090, and attorneys' fees and costs. *Id.* at 19. Nuri's CPA claims are premised on her CEMA cause of action. *Id.* at 18.

Nuri filed this suit in King County Superior Court. *Id.* at 1. True Religion timely removed the case to this Court, Dkt. No. 1 at 2, asserting both diversity and Class Action Fairness Act ("CAFA") jurisdiction, *id.* at 3–10. It then filed a motion to dismiss Nuri's complaint based on federal preemption and failure to state a claim. Dkt. No. 19. The Court ordered True Religion to show cause why this case should not be remanded to King County Superior Court for lack of subject matter jurisdiction due to lack of Article III injury. Dkt. No. 49. True Religion timely filed its response. Dkt. No. 51.

ORDER REMANDING CASE - 2

## II.   DISCUSSION

"[B]oth the Supreme Court and [the Ninth Circuit] have held that whether or not the parties raise the issue, federal courts are *required* sua sponte to examine jurisdictional issues such as standing." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (citation modified). Removal of a civil action to federal district court is proper when the federal court would have original jurisdiction over the state court action. 28 U.S.C. § 1441(a). Although there is "no antiremoval presumption" for cases removed pursuant to CAFA, the removing party must put forth evidence establishing jurisdiction if "the court questions[] the defendant's allegation[s]." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

Moreover, as the party invoking federal jurisdiction, True Religion bears the burden of establishing the existence of a case or controversy under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). For an injury in fact to exist, a statutory violation must have "caused [a plaintiff] to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo v. Robins*, 578 U.S. at 338). "[A] plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* (citation modified). Furthermore, "standing is not dispensed in gross;" rather, standing must be established "for each claim that [plaintiffs] press and

ORDER REMANDING CASE - 3

for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

As discussed above, Nuri seeks statutory damages for each message sent in violation of CEMA, as well as treble damages under both CEMA and the CPA. Dkt. No. 1-1 at 19. She also seeks injunctive relief requiring True Religion's compliance with CEMA. *Id.* She avers that "[a]n injury occurs anytime a commercial e-mail is transmitted that contains false or misleading information in the subject line." *Id.* at 4. The Washington Supreme Court recently held that "CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the e-mail that violates CEMA." *Brown v. Old Navy, LLC*, 567 P.3d 38, 45 (Wash. 2025).

The legislature's creation of a statutory prohibition or obligation and a cause of action "does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]" *TransUnion*, 594 U.S. at 426. While CEMA does not require that Nuri independently establish an injury in fact under Washington law, *see Brown*, 567 P.3d at 45, the Court "cannot treat an injury as 'concrete' for Article III purposes based only on [the legislature's] say-so," because "under Article III, an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 426–27 (citation modified). For standing purposes, therefore, an important difference exists between a plaintiff's *statutory* cause of action to sue a defendant over the defendant's violation of state law, and a plaintiff suffering *concrete harm* because of the defendant's violation of state law. *Id.* The Ninth Circuit has interpreted *TransUnion* to "require[] a court to assess whether an individual plaintiff" claiming harm based on an intangible injury "has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

ORDER REMANDING CASE - 4

Despite alleging in its Notice of Removal that this Court has jurisdiction over this case, Dkt. No. 1 at 3–10, True Religion argues in its motion to dismiss that Nuri fails to allege "that she saw the emails when they arrived, opened them, relied upon them, or was injured in any way by them," Dkt. No. 19 at 1 (describing the emails as containing an "immaterial and inconsequential misstatement"). True Religion adds that CEMA "is not based on 'traditional tort theories'" and "does not require reliance, injury, or even materiality[.]" *Id.* at 2 (reiterating that "nowhere in the complaint [does Nuri] allege[] that True Religion's alleged misstatements in the subject line were materially false, that she relied upon them, or that she suffered any damage as a result of these alleged false subject lines").

In response to the Court's order requiring True Religion to show cause why the case should not be remanded based on the above representations, which essentially concede that Nuri lacks Article III standing, True Religion argues that Nuri "did *not* allege a reliance injury, as required to survive [] preemption" but "*did* allege a nuisance injury, which numerous courts have held is sufficient to establish Article III standing[.]" Dkt. No. 51 at 1–2. According to True Religion, the "alleged receipt of voluminous, deceptive spam confers standing under Article III because: (i) the resulting harm closely resembles injuries sounding in nuisance; and (ii) CEMA was enacted precisely to shield consumers from the associated intrusion, distraction, and cost." *Id.* at 2.

True Religion's arguments are unavailing. "[N]ot all inaccuracies cause harm or present any material risk of harm" required for Article III injury. *Spokeo v. Robins*, 578 U.S. at 342. Indeed, even injuries sounding in nuisance require "real and appreciable interference," Restatement 2d of Torts, § 821F(c),[1] and must be unsolicited, Restatement 2d of Torts, § 892A(1) ("One who effectively consents to conduct of another . . . cannot recover . . . for the conduct or for harm

---

[1] *See also Tiegs v. Watts*, 954 P.2d 877, 883–84 (Wash. 1998) ("An actionable nuisance must either injure the property or unreasonably interfere with enjoyment of the property.").

ORDER REMANDING CASE - 5

resulting from it."). *Cf. Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1126–27 (9th Cir. 2026) (a nuisance injury under the Telephone Consumer Protection Act ("TCPA") does not occur when a recipient consents to "listen to a prerecorded message," as opposed to when the recipient is "immediately and *involuntarily* subjected to the nuisance of listening to an artificial or prerecorded voice" (emphasis added)); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("[T]he telemarketing text messages at issue here, *absent consent*, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA." (emphasis added)). That the Washington legislature made false and misleading emails unlawful—without "requir[ing] a showing of injury for statutory damages," *Brown*, 567 P.3d at 45—does not relieve this Court of its obligation "to independently decide whether a plaintiff has suffered a concrete harm under Article III," *TransUnion*, 594 U.S. at 426.[2]

Contrary to True Religion's arguments, Nuri's allegations do not closely resemble nuisance or otherwise establish Article III standing.[3] There is no allegation that any of the relevant emails were unsolicited; to the contrary, Nuri provided her email address to True Religion and "would like to continue receiving truthful information from True Religion regarding its products." Dkt. No. 1-1 at 14. And because Nuri has no issue with the volume of emails from True Religion, but rather the content, True Religion's newfound arguments about wasted email inbox space fall flat. Dkt. No. 51 at 4. Moreover, Rule 11 does not countenance True Religion's about-face in its

---

[2] True Religion cites to *Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023) for the proposition that "disparate legal standards . . . govern[]: (a) the injury required to confer standing; and (b) the injury required to plead a claim (or in this case, survive preemption)." Dkt. No. 51 at 2–3. Unlike this case, *Jones* involved a Washington law requiring a *higher* "pleading floor" than required by Article III. 85 F.4th at 573–74. Here, Washington law "does not require a showing of injury," *Brown v. Old Navy*, 567 P.3d at 45, so the "pleading floor" is *lower* to state a claim under Washington law than required by Article III, the inverse of *Jones*.

[3] True Religion also relies on the logic of cases finding Article III injury due to invasion of privacy, though True Religion does not affirmatively argue that Nuri was injured on that basis. Dkt. No. 51 at 5–6. In any event, "[t]his is not a violation of privacy" case "because Plaintiff welcomed Defendants' marketing emails and even wishes to continue to receive Defendants' emails." *Montes v. Catalyst Brands LLC*, No. 2:25-CV-0281-TOR, 2025 WL 3485827, at *3 (E.D. Wash. Dec. 4, 2025).

response to the Court's order to show cause: True Religion previously represented to the Court that the volume of emails "is not an injury because there is no cap on how many commercial emails a company can send," and because Nuri did not allege that "True Religion's products were not actually discounted, or that the sales were unavailable," Dkt. No. 28 at 10–11. It similarly emphasized that while "[t]raditionally tortious or wrongful conduct compensates for an *actual* injury," Nuri "does not explain at any point how True Religion's email subject lines led to any harm whatsoever." *Id.* at 10. True Religion points out that Nuri "does not even allege that she saw the emails when they arrived," Dkt. No. 19 at 2, and argues that she "did not rely on the subject line's contents, nor did [she] suffer any injury or damage," *id.* at 12 ; *see also id.* at 4 ("the emails caused her no actual damage"). These assertions are a far cry from establishing that the emails caused "real and appreciable interference" or any other concrete injury. The mere "receipt of alleged misleading or false marketing email subject lines from a solicited company," absent any allegation of "economic loss, detrimental reliance, or any comparable injury," does not "constitute a concrete harm." *Montes*, 2025 WL 3485827, at *3; *see also Asabre v. Retail Servs. & Sys., Inc.*, No. PWG-22-148, 2022 WL 4326536, at *2 (D. Md. Sept. 19, 2022) (finding that defendant could not "show that [Plaintiff] ha[d] standing under Article III" to pursue claims under Maryland's CEMA statute when Plaintiff pleaded "no harm to herself as a result of [each] violation, and she [sought] only statutory damages").[4]

For these reasons, the Court finds that True Religion has failed to carry its burden on removal to establish subject matter jurisdiction. True Religion argues that if the Court finds no

---

[4] True Religion relies heavily on *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999 (W.D. Wash. 2019). Dkt. No. 51 at 3–7. *Harbers* was decided prior to *TransUnion LLC v. Ramirez*, which distinguished between "redress[ing] harms that defendants cause plaintiffs" and "hold[ing] defendants accountable for legal infractions"—the latter of which is "not grounds for Article III standing." 594 U.S. at 427–28 (2021) (citation modified). Furthermore, Harbers actually alleged that she was "deceived by Eddie Bauer's e-mails," *Harbers*, 415 F. Supp. 3d at 1010—an allegation that (as True Religion argues, Dkt. No. 28 at 6–7) is wholly absent from Nuri's complaint. *See generally* Dkt. No. 1-1.

Article III injury, that "would require dismissal of the action, not remand." Dkt. No. 51 at 7 n.3 (quoting *Montes*, 2025 WL 3485827, at *4). Not so. The Court must remand to state court "a removed case in which the plaintiff lacks Article III standing." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) ("Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III.").

### III.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.    The above-captioned case is REMANDED to the King County Superior Court;

2.    all pending motions are DENIED as moot;

3.    the Clerk of the Court shall mail a certified copy of this Order to the Clerk of the Court for the King County Superior Court;

4.    the Clerk of the Court shall also transmit the record herein to the Clerk of the Court for the King County Superior Court; and

5.    the Clerk of Court shall CLOSE this case.

Dated this 30th day of March, 2026.

Lauren King
United States District Judge

ORDER REMANDING CASE - 8